IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


United States of America,

          Plaintiff,

vs.                    Crim No:. 3:19-Cr-00338-001


Mark Eric Icker,

          Defendant,

**FILED SCRANTON APR 12 2022 PER DEPUTY CLERK**

Emergency Memorandum In Support Of Motion

For Compassionate Release Pursuant To

18 U.S.C. § 3582(c)(1)(A)(i)


The defendant, Mark Eric Icker. ("Mr. Icker"), pro-se, respectfully moves this Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). This motion should be granted because the global Covid-19 pandemic, the unusually harsh conditions of confinement as a consequence of the lockdown measures undertaken to control the spread of Covid-19 in prison, combined with Mr. Icker's medical conditions present an "extraordinary and compelling reason " for Compassionate Release.

Mr. Icker is particularly susceptible to future strains of the Covid-19

virus such as the "Delta" and "Omicron" varients and is more likely suffer dire consequences from the virus due to his underlying medical conditions. Specifically, Mr. Icker suffers from: Hypertension, Hereditary Hemorrhagic Telangiectasia (HHT), Heart Aneurysm, Asthma, Paums on Lungs (tumors), Arteriovenous Malformations in brain and lungs, and chronic bleeding has multiple stroke factors. Additionally, Mr. Icker's incarceration at Butner Low Security Correctional Institution exposes him to a particularized risk of contracting the disease.

Butner Complex has been particularly poor at managing inmates medical conditions such as Mr. Icker's that is exactly why the Butner Complex is ill-equipped to protect Mr. Icker and others like him.

Given Mr. Icker's dire situation, allowing Mr. Icker to finish out the remaining months of his sentence with his mother Beverly Richardson in Sterling, PA, is the only prudent and just response to the " extraordinary and compelling" circumstances created by the novel coronavirus. Mr. Icker is not a danger to the community and his release plan adheres to the mandates of Section 3553(a), particularly in light of the cataclysmic events of this pandemic combined with his underlying medical issues. Mr. Icker is respectfully asking the Court to consider this motion on an expedited basis as the risk to Mr. Icker's life multiplies exponentially with each passing day.

### Factual Background

ON an Unknown date to Mr. Icker, Mr. Icker was charged in a Criminal

Information with Deprivation of Rights under Color of law (Count One);
and Deprivation of Rights under Color of law, 18 U.S.C. § 242. He pleaded
guilty to the charge on November 15, 2019. Mr. Icker sentenced on July
24, 2020, to 180 months of incarceration and 3 years of supervision.

Since his incarceration, Mr. Icker has diligently taken full advantage
of educational opportunities afford to him. he has completed Civil War,
Grammer-up, mind set. Poetry-up, financial literacy, Solar system (UB),
Shu Business Ind Study, Mgmt Ind Study, Interfaith skills RPP6, Shu Real
Estate Invest Ind St, Shu Personal finance Ind Study, Shu Genetic Intro
Ind Study, Money Smart Older Adults RPP3, and Nonprofit. Mr. Icker
advises that has also worked for Carpentry, a Bop work program where
inmates can earn money towards fines, greatly reducing recidivism among
participants.

## Summary of Argument

**First,** this Court should exercise its authority to grant Mr. Icker
Compassionate Release because the Covid pandemic, combined with Mr.
Icker's susceptibility to future strains of Covid-19, and his medical
issues, are " extraordinary and compelling reasons" warranting relief.
AS long as Mr. Icker remain incarcerated, Mr. Icker faces an unacceptable
risk of contracting Covid-19 and/or complications from his underlying
medical conditions that are not being properly treated. He risks dying
from either the one.

Even in the best circumstances, Mr. Icker cannot provide self-care or receive proper treatment for his medical issues because his incarceration prevents him from following CDC Guidance " social distancing is particularly difficult in the penal setting." Seth, 461 F. Supp. 3d 242, 2020 WL 2571168, at *2; Senate Judiciary Hrg. Transcript on Incarceration during Covid-19, Rev. Com (June 02, 2020)("Testimony of Bop Dir. Michael Carvajal at 47:00)(Prisoners by design are not made for social distancing. They are on [sic] the opposite made to contain people in one area.") Indeed, there are serious doubts that Bop will be able to adequately care for prisoners as the Covid-19 pandemic continues to unfold ("The Inspector General has found widespread medical staffing shortages across Bop facilities that "lower staff morale increase staff workload, and ultimately can reduce inmates access to routine medical care. " Review of the Federal Bureau of Prison's medical staffing challenges, available at http://oig.justice.gov/reports/2016/e1602.pdf." For these reasons, federal courts nationwide have held that Covid-19 constitutes an extraordinary and compelling basis for ordering compassionate release for defendant's facing a rapidly growing mortal threat from exposure to the coronavirus in federal prisons. In light of the specific threat Mr. Icker faces, this Court should grant this motion.

**Second,** the Section 3553(a) factors warrant Mr. Icker's release. He not a danger. He has had no disciplinary issues in prison. While incarcerated, Mr. Icker has taken classes to help ensure that he will not reoffend if released. He has also taken a number of educational and vacational programming which will make him far better equipped to reenter into society than when he went in more than two years ago. Finally, Mr.

Icker has a solid release plan.

Argument

**I. The Covid-19 Pandemic Presents an Extraordinary and Compelling Reason for Mr. Icker's Compassionate Release Due to Mr. Icker's Particular Vaulnerability.**

Vulnerability

A. This Court can determine that Covid-19 presents an extraordinary and compelling reason for compassionate release.

Under Section 3582(c)(1)(A)(i), this Court "may reduce the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statement issued by the Sentencing Commission." The Sentencing Commission has issued a policy statement that provides factual considerations for determining whether compassionate release is appropriate. Those considerations include three enumerated categories of " reason " relating to defendant's medical condition, age, and family circumstances as well a " catchall" provision any "other reasons" as determined by the Bop U.S.S.G. § 1B1.13, Application Note 1(A). However, this policy statement is outdated and inconsistent with the First Step; Act to the extent it provides that only the Bop may determine what "other reasons" qualify as " extraordinary and compelling."

It is the Courts role to determine what "other reasons" warrant

(5)

compassionate release notwithstanding the Commission's outdated policy statement that provided for Bop to make that determination. See United States v. Mauman, 2:08-cr-758-TC, 2020 WL 806121, at *7-8 (D. Utah Feb 18, 2020). Numerous courts have recognized the judicial authority to find that compassionate release is warranted for "other reasons" than those set forth in U.S.S.G. § 1B1.13 Rodriguez, 451 F. Supp. 3d at 397, quoting, United States v. Beck, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019).

There is ample precedent to support compassionate release in light of prisoners particular susceptibility and vulnerability to Covid-19. Courts in the Third Circuit and across the country have found that a defendant's heightened risk and particular vulnerability to Covid-19 in prison constitutes an "extraordinary and compelling reason" in favor of compassionate release. Court across the Circuit has also recognized that the " gross disparity between the sentence that he would have received after passage of the First Step Act present an " extraordinary and compelling reason" for compassionate release. Redd, 2020 WL 1248493. Although the Court's decision in Redd did not address the coronavirus (it was not at an issue), it speaks to the issue presented here: if Mr. Icker is not released, he faces a potential death sentence, which is not what Congress or the Court intended at sentencing. See, e.g., Edwards, 2020 WL 1650406, at *6. (Had the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the Covid-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months." The Court may **grant compassionate release to avoid such a gross disparity.**

**B. Mr. Icker is more likely to suffer severe or fatal effects of Covid-19 because of his health conditions.**

People with pre-existing health issues are particularly at risk of experiencing severe side effects or death as a result of this virus. According to the CDC, the following group are at high risk for severe illness from Covid-19: (1 people aged 65 and older; (2) people who live in a nursing home or long term care facility; (3) people with high risk conditions, such as chronic lung disease or moderate to severe asthma, serious heart conditions, people who are immunocompromised, obese, or have diabetes, renal failure, or liver disease. Additionally, thirty-seven percent of Covid-19 patients admitted to the ICU had another chronic disease like hypertension, asthma, chronic lung disease, Paums on lungs, and obesity.

Mr. Icker has several pre-existing conditions that put him at a greater risk of severe or fatal effects should he contract Covid-19. Mr. Icker has a history of asthma. Additionally, Mr. Icker suffers from high blood pressure, Heart Aneurusm, Congestive heart failure, Chronic lung diseases, Paums on lungs, and obesity. All of these conditions especially in combination with each other, put him at great risk.

The CDC has noted that respiratory disease, like Covid-19, often make the heart work harder, which can then lead to worsening Covid-19 symptoms. For individuals that already have heart difficulties, like hypertension, and heart aneurusm, the heart begins to overwork leading to the often

severe and fatal effects. Since Mr. Icker has two conditions Heart
Aneursum and Hypertension, and is not receiving the proper treatment to
manage those conditions, his risk of having severe or fatal effects from
Covid-19 is higher.

In sum, Mr. Icker's particular susceptibility to Covid-19 while
incarcerated, in combination with the mortal risk to Mr. Icker given this
underlying medical issues constitutes an extraordinary and compelling
reason warranting Mr. Icker's compassionate release.

## C. Mr. Icker's Conditions of Confinement during the Pandemic

Mr. Icker has experienced unusually harsh conditions of confinement as
a consequence of the lockdown measures undertaken to control the spread
of Covid-19 in prison. These conditions include " constant lockdown and
other unusually severe conditions of confinement necessary to reduce the
risk of Covid-19 infection in the close quarters of a prison. United
States v. Henareh, 2021 U.S. Dist. Lexis 6855, 2021 WL 119016, at *5
(S.D.N.Y. Jan. 13, 2021). The lockdown measures have rendered the last
year and a half of his sentence significantly " harsher and more punitive
than would otherwise  have been the case. "United States v. Rodriguez,
492 F. Supp. 3d 306, 311 (S.D.N.Y. Sept 30, 2020). See also United States
v. Garcia, 505 F. Supp. 3d 328, 332 (S.D.N.Y. Dec. 08, 2020)("[H]eigtened
restrictions imposed upon all prisoners during the pandemic. Made
conditions of confinement harsher, both physically and psychologically,
than they would otherwise normally be."

While Mr. Icker's health conditions may become less important if and when the pandemic ceases, the pandemic itself has not only posed a threat to Mr. Icker's health but has made his incarceration more harsh and effectively more punitive, than could have been expected by the sentencing court. "For someone with Mr. Icker's health profile, the risk of suffering severe health consequences if the contracts Covid-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure [his] safety, means that the actual severity of [his] sentence as a result of the Covid-19 outbreak exceeds what the [sentencing] [C]ourt anticipated." " Rodriguez, 492 F. Supp. 3d at 311 (quoting United States v. Mel, No. TDC-18-0571, 2020 U.S. Dist. Lexis 74491, 2020 WL 2041674, at *D.Md. Apr. 28, 2020)). Indeed, many courts, have taken into consideration the harsh and difficult conditions of detention during the pandemic during sentencing hearings. See, e.g., United States v. Flores-Alberto, No. 20 Crim. 668 (07/19/21 Sentencing Tr. at 12: 5-12)("[D]etention during this pandemic has been extremely difficult...There's no question that it's been more harsh than in normal times...[T]he defendant's pretrial conditions were qualitatively more severe in kind and degree than the prospect of such experience is reasonably foreseeable in the ordinary case."); United States v. Del Carmen, No. 18 Crim. 669 (05/21/21) Sentencing Tr. at 16: 2-7(" I do think the fact that you've served a significant number of months under these [pandemic] conditions since last year counts for a lot because I think...it's been harsher conditions, and I've been giving people credit because I think that effectively is like more punishment") United States v. Ramirez, No. 20 Crim. 29(10/20/20 Sentencing Tr. at 19:8-12)(explaining that "the nature of [the defendant's] detention

during this pandemic has been really harsh...and frankly, I think that makes it probably twice as punitive as it otherwise be").

Releasing Mr. Icker is appropriate given Mr. Icker's history and characteristics and his rehabilitation which incarcerated.

Mr. Icker's sentence should be reduced because Mr. Icker is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). Furthermore, the relevant 18 U.S.C.§ 3553(a) factors favor a sentence reduction. Mr. Icker has been rehabilitated while incarcerated. He has taken numerous vocational and educational classes, as well as attended treatment. He also has a solid release plan with a safe, stable place to live. and employment.

**A. Mr. Icker is not a danger**

Mr. Icker is an ideal candidate for release. Mr. Icker is incarcerated for a non-violent Civil Rights violation offense. Since his incarceration Mr. Icker has a good disciplinary record. He is currently housed at FCI Butner-Low, a low security federal correctional institution, which provides insight into the BOP's assessment on whether an individual is a community danger. See. e.g., United States v. Somerville, 2020 WL 2781585 at *14 (W.D. Pa. May 29, 2020)(reducing a gun-possessing, drug distributor's 180 months sentence to three years of probation for obesity and asthma-related concerns, in part, because the incarcerated individual was " housed in a low security facility...")

Indeed, by reducing the potential spread of Covid-19 within the prison

system, Mr. Icker's release would benefit public safety. See, e.g. United

States v. Harris, No. 19-Cr-356, 2020 WL 1482342, at *1(D.D.C. Mar. 26,

2020)("The Court is convinced that incarcerating defendant while the

current Covid-19 crisis continues to expand poses a far greater risk to

community safety than the risk posed by defendant's release to home

confinement on...strict conditions." Mr. Icker's release would also

reduce the existing strain on Bop's healthcare facilities.

Finally, Mr. Icker has strong support in the community. This will

essential to his successful reintegration to society upon release. He has

maintained close ties with his family throughout his time in prison.

Backed by this support and given the rehabilitative efforts he has made

since sentencing, Mr. Icker would not present a danger to society.

**B. The § 3553(a) factors and Mr. Icker's rehabilitation weigh in favor
of relief.**

Mr. Icker needs treatment for his health conditions. Care-or lack

thereof- is "a factor to be heavily weighed" in favor of release. 18

U.S.C. § 3553(a) ayalysis.  See United States v. Griggs, ---F.Supp. 3d---

, 2020 WL 2614867 at *9 (D.S.C. May 22, 2020). This is especially true

during the Covid-19 pandemic, when BOP staff" is consumed with containing

and treating the spread of Covid-19, " making it " far more difficult for

inmates with chronic health conditions to seek routine follow-up care and

undergo necessary diagnostic screenings for potential acute medical

problems. "Id.; see also United States v. Burrill,---F. Supp. 3d---2020 WL

1846788 at *3 (N.D. Cal. Apr. 10, 2020)(finding "[W]hich it may have been true when Burill was sentenced that the Bop could provide him adequate medical care, circumstances have changed. Burill unlikely to be able to get the medical care he needs in the midst of an ongoing pandemic.") Mr. Icker has been having issues receiving follow up care because of the Covid-19 pandemic. Given the unusually harsh conditions, infections with Covid-19, and pain and mental anguish from delayed diagnostic care that Mr. Icker ensures while at FCI Butner low during the pandemic. It is clear Mr. Icker's conditions constitutes an extraordinary and compelling reason for release. Mr. Icker has tired to make the most of his incarceration by participating in programming, both vocational and educational. As noted above, he has completed a wide range of courses, investing in his future. Also, he has maintained strong ties to his family since his incarceration. Keeping a good relationship with them is one of the most important things to Mr. Icker. Since Mr. Icker's incarceration, he has vowed to his family and friends that he will be a better man coming out than he went in.

Each day that Mr. Icker is in custody heightens his risk for infection. He has no way to practice " social distancing," other protective measures that are mandated by health official throughout the nation and which promise some hopes of surviving the consequences of infection, or receive the medical care that he needs for his underlying medical issues.

### Conclusion

Mr. Icker is respectfully requesting that this Court orders his immediate

compassionate release and impose his conditions of supervise release.


Date:                              Respectfully Submitted,

                                                              4/6/22

Exhibit One

Administrative Remedy Process

**U.S. Department of Justice**
**Federal Bureau of Prisons**          **Request for Administrative Remedy**
**LSCI Butner**                                    **Part B - Response**

**Admin Remedy Number:** 1114275-F1

This is in response to your Request for Administrative Remedy
receipted March 22, 2022, in which you appeal the denial of your
request for a reduction in sentence (RIS) and/or compassionate
release.

Title 18 of the United States Code, section 3582 (c)(1)(A), allows a
sentencing court, on motion of the Director of the BOP, to reduce a
term of imprisonment for extraordinary or compelling reasons.  BOP
Program Statement No. 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A)
and 4205(g), provides guidance on the types of circumstances that
present extraordinary or compelling reasons, such as the inmate's
terminal medical condition; debilitated medical condition; status as
a "new law" elderly inmate, an elderly inmate with medical
conditions, or an "other elderly inmate"; the death or incapacitation
of the family member caregiver of the inmate's child; or the
incapacitation of the inmate's spouse or registered partner.  Your
request for a Compassionate Release/Reduction in Sentence under
Terminal Medical Condition criteria concerns was evaluated under
general guidance outlined in the Program Statement.  You have not
been diagnosed with a terminal illness with a life expectancy of less
than 18 months.

Based on the above, your request for administrative remedy is denied.

If you are dissatisfied with this response, you may appeal to the
Regional Director, Federal Bureau of Prisons, Mid-Atlantic Regional
Office, 302 Sentinel Drive, Suite 200, Annapolis
Junction, MD 20701.  Your appeal must be received in the Regional
Office within 20 calendar days from the date of this response.

_____                    _____
M. L. King, Warden                                  Date   3/28/2022

Exhibit Two

Individualized Needs Plan Program
Review



**Individualized Needs Plan - Program Review   (Inmate Copy)**

SEQUENCE: 02219080

Dept. of Justice / Federal Bureau of Prisons

Team Date: 11-23-2021

Plan is for inmate: ICKER, MARK ERIC  77123-067

| | | | |
|---|---|---|---|
| Facility: | BUF  BUTNER LOW FCI | Proj. Rel. Date: | 05-13-2033 |
| Name: | ICKER, MARK ERIC | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 77123-067 | DNA Status: | OAK04418 / 11-09-2020 |
| Age: | 32 | | |
| Date of Birth: | 05-03-1989 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | FACL CARP | FACILITIES CARPENTRY | 08-25-2021 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BUF | ESL HAS | ENGLISH PROFICIENT | 01-12-2021 |
| BUF | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-12-2021 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BUF | | CIVIL WAR (UB) | 11-17-2021 | CURRENT |
| BUF | | GRAMMAR-SP (UB) | 11-17-2021 | CURRENT |
| BUF | | MIND SET | 11-17-2021 | CURRENT |
| BUF | | POETRY-SP (UB) | 11-17-2021 | CURRENT |
| BUF | C | FINANCIAL LITERACY | 10-14-2021 | 11-05-2021 |
| BUF | C | SOLAR SYSTEM (UB) | 10-14-2021 | 11-05-2021 |
| BUF | C | SHU BUSINESS IND STUDY | 08-12-2021 | 09-08-2021 |
| BUF | C | INTRODUCTION TO HOBBYCRAFT | 08-06-2021 | 08-11-2021 |
| BUF | C | SHU RESTAURANT MGMT IND STUDY | 05-25-2021 | 08-10-2021 |
| BUF | C | INTERFAITH LIFE SKILLS RPP 6 | 02-14-2021 | 07-13-2021 |
| BUF | C | SHU REAL ESTATE INVEST IND ST | 05-13-2021 | 06-03-2021 |
| BUF | C | SHU PERSONAL FINANCE IND STUDY | 04-19-2021 | 05-17-2021 |
| BUF | C | SHU GENETICS INTRO IND STUDY | 03-16-2021 | 04-19-2021 |
| BUF | C | MONEY SMART OLDER ADULTS RPP 3 | 04-08-2021 | 04-08-2021 |
| BUF | C | SHU NONPROFIT | 02-17-2021 | 03-17-2021 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 01-19-2021 |
| CARE2 | STABLE, CHRONIC CARE | 01-07-2021 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| C19-QUAR | COVID-19 QUARANTINED | 12-04-2020 |
| C19-RCVRD | COVID-19 RECOVERED | 11-19-2020 |
| NO PAPER | NO PAPER MEDICAL RECORD | 12-03-2020 |
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 08-25-2021 |
| YES F/S | CLEARED FOR FOOD SERVICE | 08-25-2021 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED NONE | DRUG EDUCATION NONE | 01-08-2021 |

## FRP Payment Plan



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ICKER, MARK ERIC  77123-067

SEQUENCE: 02219080
Team Date: 11-23-2021

| Most Recent Payment Plan |
|---|

| FRP Assignment: | **PART** | **FINANC RESP-PARTICIPATES** | **Start: 01-15-2021** |
|---|---|---|---|
| Inmate Decision: | **AGREED** | **$25.00** | Frequency: **QUARTERLY** |
| Payments past 6 months: | **$50.00** | Obligation Balance: **$150.00** |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $150.00 | IMMEDIATE | AGREED |

| | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|---|
| | | 09-10-2021 | BUF | PAYMENT | INSIDE PMT | $25.00 |
| | | 06-10-2021 | BUF | PAYMENT | INSIDE PMT | $25.00 |

**FRP Deposits**

Trust Fund Deposits - Past 6 months:  $1,810.84          Payments commensurate ?   Y

New Payment Plan:   ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 01-15-2021 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 11-24-2021 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 11-24-2021 |
| N-COGNTV N | NEED - COGNITIONS NO | 11-24-2021 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC N | NEED - EDUCATION NO | 11-24-2021 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 11-24-2021 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 11-24-2021 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 11-24-2021 |
| N-MEDICL Y | NEED - MEDICAL YES | 11-24-2021 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 11-24-2021 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 11-24-2021 |
| N-TRAUMA N | NEED - TRAUMA NO | 11-24-2021 |
| N-WORK N | NEED - WORK NO | 11-24-2021 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 10-21-2021 |

**Progress since last review**

He maintains institutional employment in Facilities Carpentry.

He is currently enrolled in Civil War studies, Grammar, Mind Set program, and Poetry. He recently completed Financial Literacy, Solar System, Business Studies, Intro to Hobby Craft, Restaurant Management, and Interfaith Life Skills.

**Next Program Review Goals**

Complete current enrolled programs by next team May 2022.

Due to the amount of program participation no program recommends at this team.

**Long Term Goals**

Provide unit team with a release plan by November 2031. Enroll in the HVAC program by July 2022. Enroll in a Healthier Me by November 2022.

**RRC/HC Placement**

| |
|---|

**Comments**

** No notes entered **

```
             *    MALE CUSTODY CLASSIFICATION FORM    *    03-14-2022
                                                           13:30:27
PAGE 001 OF 001
                        (A) IDENTIFYING DATA
REG NO..: 77123-067           FORM DATE: 07-23-2021        ORG: BUF
NAME....: ICKER, MARK ERIC
                                       MGTV: NONE
PUB SFTY: GRT SVRTY,SEX OFFN,SENT LGTH   MVED:
                         (B) BASE SCORING
DETAINER: (0) NONE             SEVERITY.......: (7) GREATEST
MOS REL.: 141                  CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE             VIOLENCE.......: (0) NONE
VOL SURR: (3) VOL SURR         AGE CATEGORY...: (4) 25 THROUGH 35
EDUC LEV: (0) VERFD HS DEGREE/GED   DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                        (C) CUSTODY SCORING
TIME SERVED.....: (3) 0-25%    PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD     TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE     FAMILY/COMMUN..: (4) GOOD


                  --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +8  +19    -3        +5         LOW        N/A             IN     DECREASE



           TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# FSA Recidivism Risk Assessment (PATTERN 01.02.01)
### Register Number:77123-067, Last Name:ICKER

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 77123-067 | Risk Level Inmate....: R-MIN |
| Inmate Name |   General Level......: R-MIN (3) |
|   Last.........: ICKER |   Violent Level......: R-MIN (4) |
|   First........: MARK | Security Level Inmate: LOW |
|   Middle.......: ERIC | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: BUF |
| Gender.........: MALE | Start Incarceration..: 11/06/2020 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 32 | 21 | 12 |
| Walsh w/Conviction | TRUE | 1 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -4 | -2 |
| Drug Program Status | NoNeed | -9 | -3 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | N/A | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 6 | -6 | -3 |
| Work Programs | 0 | 0 | 0 |
| | Total | 3 | 4 |

Exhibit Three

Medical Specialist's



# GEISINGER
## HEALTH SYSTEM

Family Practice, Mt Pleasant
531 Mt Pleasant Dr
Scranton PA 18503
Phone: 570-342-8500
Fax: 570-342-0924
7/16/2020


Mark E Icker
501 Edgar St
Throop PA 18512


To whom it may concern,

This letter is written on behalf of Mark Icker. He is a patient of mine and has a condition known as Osler-Weber-Rendu syndrome or Hereditary Hemorrhagic Telangectasias. This puts him at risk for spontaneous bleeding typically from the nose, brain, lungs, and intestine.

He is known to have arteriovenous malformations in the brain and lungs and has not had adequate follow up in years. He is experiencing recurrent nose bleeds, worsening headaches. He is slated for CAT scans of the chest and MRI of the brain to evaluate his condition to see if any advanced intervention such as coiling procedures are needed.

He would not be able to get any of this care adequately performed in the penal system. I ask that he be allowed to get his testing done.

In addition, his mother also has the disease and she presently depends on him to assist her for her epistaxis and severe bleeding episodes and medical care.


Sincerely,

Sean P McCall, DO

 Penn Medicine

Hospital *of the* University *of* Pennsylvania

**Scott O. Trerotola, M.D.**
Stanley Baum Professor of Radiology
Professor of Surgery
Vice Chair for Quality
Associate Chair for Interventional Radiology
Chief, Interventional Radiology

January 24, 2022

Name: Mark Icker
DOB: 5/31/1989

Dear Department of Corrections:

Mark Icker has a genetic disorder known as Hereditary Hemorrhagic Telangiectasia (HHT), which causes abnormal blood vessel formation in the skin, mucous membranes, and organs such as the lungs, liver, and brain. Due to these malformations, patients may experience symptoms ranging from nosebleeds, acute and chronic digestive tract bleeding, and various problems due to the involvement of other organs. Treatment focuses on reducing bleeding from blood vessel lesions, and sometimes surgery or other targeted interventions to remove arteriovenous malformations in organs. Chronic bleeding often requires iron supplements and sometimes blood transfusions.

Mr. Icker was last seen in September 2020 in our office for clinical evaluation of his HHT. At that time, an evaluation of his lungs did not reveal any vascular malformations requiring treatment, and he needs reassessment of his lungs every 5 years, next in Summer 2025. He does not need further evaluation of his brain. He should be monitored periodically for the development of anemia due to chronic blood loss.

As Mr. Icker has a rare genetic disorder, should he require treatment for any sequela I strongly recommend that it would be completed at an HHT Center of Excellence, such as UPHS. Please let me know if I can be of any further assistance in his care.

Sincerely,

Scott O. Trerotola, MD

Exhibit Five

Release Plan For Mr. Icher

**RELEASE PLAN**

for

MARK ICKER

Reg. No. 77123-067

Primary Contact: Beverly Richardson - mother

915 Maple Acre Road

Sterling, PA 18463

phone: (570) 878-4094

email:

Secondary Contact: Mark Icker Sr. - Father

501 Edgar Street

Throop, PA 18512

phone: (570) 878-4093

email: micker@echoes.net

## NECESSITIES

1. Shelter

    a. I plan to live with my mother, Beverly Richardson, at 915 Maple Acre Road, Sterling, PA 18463. This is a single family 3 bedroom home. This is the house I have lived in since I was born. My step-father, Jeffrey Richardson, also lives at this address as well as my daughter, Juliana Icker, who I plan to raise at this address.

    b. My backup plan would be to live with my father at 501 Edgar Street, Throop, PA 18512. My father, Mark Icker Sr., and step-mother, Lynn Icker, reside here. The U.S. Probation Department approved of and has visited this address while on pre-trial release until my self-surrender.

2. Food

    a. Under my primary plan, I will be living with my mother and will have food and other necessities from her income as well as mine.

    b. My backup plan would be to rely on my father or grandmother for support.

    c. My third alternative would be to receive short-term assistance from

        Snap: 800-221-5689

3. Clothing

    I currently have sufficient clothing including dress, casual, everyday, business, and work clothes stored at my mothers address.

4. Transportation

    a. I have a driver's licensed in the state of Pennsylvania.

    b. I own a 2016 Dodge Ram 1500. It is in excellent condition and maintained at my mother's garage. It has current inspection and insurance.

    c. My mother owns a 2014 Mercedes Benz E-350 as well as a 2018 Dodge Ram 2500. She as well as my father can also assist in transportation if needed.

5. Health, Insurance and Medical Needs.

    a. I have medical insurance in Pennsylvania through

    b. I plan on arguing my onw health insurance or seeking coverage through the Affordable Care Act.

    c. I will continue to use Pennstate University to receive care for my illness.

6. Income and Employment

    a. throughout my life, I have worked in construction for my father's company. I am a skilled carpenter and handyman. I currently work in carpentry for the BOP. If I cannot find other means of employment, I will work for my father.

    b. I was certified through Cackawanna County College's act program. While that was surrendered, I still have 11 years experience in the law enforcement field. I would seek this as a backup to possibly work in a law office.

    c. I will actively seek employment in my immediate area in Sterling, PA. There are several businesses there that are usually hiring.

7. Social Support

    a. My mother and father will be my primary support upon my release. I maintain a close relationship with my parents, even with the large distance, we are apart. My father has my power of attorney at this time.

    b. My daughter, Julianna Icker, resides at my mother's address as well. I maintain a close relationship with my child by calling her daily and discussing her daily events and school. I plan upon release to raise her and support her.

    c. My grandmother, Helen Butler, lives approximately 1 mile from my mother's residence. My grandfather recently passed away leaving her living alone. I also plan to assist her and help her maintain her home and property. She is elderly and needs assistance, which I plan to provide.

**Proposed Monthly Budget**

Income:                          (This may vary by employment)

Full-time work (estimate):    $2400 (10/hr for 40/workweek)
Taxes:                        -$400
Net Income:                   $2000

Expenses: Initially, my parents will be assisting me with my expenses until
        I can establish a set budget. My expenses will mostly be for
suporting my daughter. My cellphone is on a family plan paid by        my
father.

Food:              $400
Clothing:          $100
Transportation:    $200
Vehicle:           $200
Insurance:         $150
Hygiene/MISC:      $100
Child Care:        $600
Estimated Total:   $1550

Mark Icker #77123-067
FCI Po Box 999
Cutner NC 27509

LOW SECURITY CORRECTIONAL INST.
P.O. BOX 700
BUTNER, NORTH CAROLINA 27509

DATE: _____

"SPECIAL/LEGAL MAIL"

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for any further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosed to the above address.

William J Nealon Federal Building
and United States Courthouse
235 North Washington Avenue
Room 101
Scranton Pa 18503

PER

RECEIVED
SCRANTON

APR 12 2022

DEPUTY CLERK

