UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

Case No. 3:19-cr-338

v.

MARK ERIC ICKER,
    Defendant

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. §3582(c)(1)(A)
(COMPASSIONATE RELEASE)

Upon motion of the defendant for a reduction in sentence under 18 U.S.C. §3582(c)(1)(A), **(Doc. 54)**, after considering the briefs and exhibits filed by the parties, the applicable factors provided in 18 U.S.C. §3553(a), and the applicable policy statements issued by the Sentencing Commission, **IT IS ORDERED** that the motions are:

☐    GRANTED

☐    The defendant's previously imposed sentence of imprisonment of _____ is reduced to _____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

☐    Time served.

If the defendant's sentence is reduced to time served:

☐    This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall

be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended, or

☐ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. §3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of ___ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

X **DENIED** after complete review of the motion on the merits.

X **FACTORS CONSIDERED** (Optional)

Since the complete background of this case is stated in the Third Circuit's September 14, 2021 Opinion vacating Icker's judgment of conviction only with respect to the Sex Offender Registration and Notification Act, ("SORNA"), conditions of his supervised release, *see* United States v. Icker, 13 F.4th 321 (3d Cir. 2021), it is not fully repeated herein. (*See also* government's opposition brief, Doc. 57 at 10-17). Briefly, on November 26, 2019, Icker pleaded guilty to 2 counts of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. §242. (Doc. 10). Icker's advisory sentencing guideline range was 210 to 240 months. (Doc. 22). The court varied downward, sentencing Icker on July 24, 2020, to an aggregate sentence of 180 months' imprisonment followed by three years of supervised release. Icker began serving his 15-year sentence on September 9, 2020. (Doc. 25). On October 14, 2021, the court amended Icker's judgment only with respect to removing the SORNA conditions of his supervised release as mandated by the Third Circuit. (Doc. 52).

On April 12, 2022, Icker filed his motion for compassionate release pursuant to the First Step Act, 18 U.S.C. §3582(c)(1)(A), alleging that his sentence should be reduced and that he should be immediately released from prison due to the danger of being reinfected with COVID-19 and due to his serious preexisting medical conditions. Icker is confined at FCI Butner Low and his BOP projected release date is 11 years away on May 13, 2033. *See*, Find an Inmate, Federal Bureau of Prisons, http://www.bop.gov/inmateloc/ (search for BOP Register Number "77123-067"). As such, Icker still has about 90% of his federal sentence remaining. The court finds that Icker has exhausted his BOP administrative remedies with respect to his instant motion.

First, defendant Icker, almost age 33, claims that he has shown extraordinary and compelling reasons for compassionate release since he is at increased risk of developing severe illness if he again contracts COVID-19, according to the CDC, based on his serious medical conditions, including, "Hypertension, Hereditary Hemorrhagic Telangiectasia (HHT), Heart Aneurysm, Asthma, Paums on Lungs (tumors), Arteriovenous Malformations in brains and lungs and chronic bleeding." (Doc. 54). Icker had COVID-19 in November 2020, and even though he alleges that he suffered symptoms such as a fever, cough, a headache and body aches, as well as loss of taste and smell, he recovered from it. Icker also alleges that the prison where he is confined, FCI Butner Low, is not adequately protecting inmates from COVID-19 and, is not capable to caring for him with his serious heart condition, ascending aortic aneurysm, alleging that the prison has been "particularly poor at managing inmates medical conditions." As such, Icker requests the court to immediately reduce his sentence and release him from prison. There is no dispute that Icker suffers from serious medical conditions as reflected by his extensive BOP medical records submitted by the government under Seal, (Doc. 59), as well as by the Exhibits filed by Icker, (Docs. 54 & 55 & 61-1). As the government summarizes, (Doc. 57 at 19), in its brief, "Icker has an aortic aneurysm that has been detected by specialists at Duke Medical and is in need of repair", and "it appears that Icker already underwent, in mid-April 2022, a heart catherization in anticipation of eventual aortic valve replacement or "AVR" surgery, which will seek to repair this aneurysm." However, Icker's medical records also reveal that he is receiving regular and proper medical care for his conditions, including periodic follow-up visits with cardiac specialists and cardiothoracic surgeons at highly regarded outside medical facilities, such as Duke Regional Hospital. (*See* Doc. 55). Thus, as the government summarizes: "Icker has received excellent and attentive care [by the BOP] to address [his medical] problems, including at very reputable outside medical institutions"; "Icker's conditions and symptoms have remained controlled, and he remains capable of independent daily living in the prison setting"; and "[neither] his heart problems, [n]or any of his other medical conditions, amount to terminal conditions, from which Icker is not expected to recover." (Doc. 57 at 30). Icker's medical records also indicate that when he previously contracted COVID-19, he

4

had only mild symptoms without any lasting side-effects. (Doc. 59-1 at 1 & Doc. 59-2 at 1-4). Also, contrary to his allegations regarding the unsafe conditions at the prison regarding the pandemic, presently, at FCI Butner Low there are no positive COVID-19 inmate and staff cases and, 412 inmates recovered from the virus, including Icker, and 112 staff members recovered. Currently, at the entire prison complex at FCC Butner, 1153 staff and 3637 inmates have been vaccinated. *See* https://www.bop.gov/coronavirus/. "The resulting herd immunity tends to reduce further the risk of infection." U.S. v. Matos, 2022 WL 702858, *4 (D. N.J. March 9, 2022). Even though Icker refuses vaccination, as discussed below, he still benefits from the herd immunity of the inmates and staff who have been vaccinated and from those who already had the virus.

Significantly, the government points out that the BOP medical records reveal that Icker refused, without any rational or legitimate medical reason, to get an offered COVID-19 vaccination on April 9 2021. (*See* Doc. 59-2 at 15). In his reply brief, Icker does not dispute that he was offered and refused a COVID-19 vaccination, and he fails to address his refusal. (Doc. 61). In fact, Icker has now had over one year to reconsider his refusal to receive a COVID-19 vaccination yet there is no indication in the record that he has consented to the vaccine despite all of the medical data indicating the efficacy and safety of vaccinations. Also, Icker's repeated reliance on the CDC for purposes of showing that his medical conditions still render him more vulnerable to becoming severely ill if he is reinfected with COVID-19, even though he previously recovered from it, is disingenuous since on the other hand he completely ignores CDC's strong recommendation for people to get fully vaccinated as the best protection against getting the virus and for recovering with less symptoms if they do contract the virus. *See* United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective."); *see also* United States v. Darby, 2022 WL 1423089, *5 (D. N.J. May 5, 2022) (holding that '[t]he available vaccines (Pfizer, Moderna, and Johnson & Johnson) have been shown to be highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms", and "[t]he wide availability of vaccines tends to render the COVID-19 risk less extraordinary or compelling.") (citing https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status and https://covid.cdc.gov/covid-data-tracker/#covidnet-hospitalizations-vaccination).
In any event, this court concurs with a large number of courts who have found that "[defendant's] refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release." United States v. Ortiz, 2021 WL 1422816, at *3–4 (E.D. Pa. Apr. 15, 2021) (string citations omitted). *See also* United States v. Church, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) ("We agree that Church's 'unexplained refusal to accept a COVID-19 vaccination when offered negates [his] otherwise compelling medical reasons for release.'"); United States v. Graham, 2021 WL 3728337, at *3 (E.D. Pa. Aug. 23, 2021); United States

5

v. Bonilla, 2021 WL 3634181, at *2 (D. N.J. Aug. 17, 2021) (holding that the refusal to be vaccinated without any legitimate medical reason was fatal to establishing an "extraordinary and compelling" reason for an inmate's compassionate release).

As the court in Ortiz, 2021 WL 1422816, at *4, aptly explained:

> This Court agrees with the decisions reviewed above and others, that while a petitioner who declines a COVID vaccine is "within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." United States v. Jackson, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021). To find otherwise would run counter to the Sentencing Commission's policy statements, which the statute requires this and other courts to consider. The following logic bears this out: if (i) a petitioner has a "serious physical or medical condition" that poses risks which might constitute extraordinary and compelling circumstances justifying release, but (ii) he also refuses an available and highly efficacious vaccine that almost entirely mitigates those risks, then (iii) he can no longer be said to suffer from a serious physical or medical condition "that *substantially diminishes [his] ability ... to provide self-care within the environment of a correctional facility.*" U.S.S.G. §1B1.13, App. Note 1 (emphasis added). The availability of the vaccine necessarily negates the diminishing effect his condition has on his ability to provide self-care. Put differently, following the availability of a vaccine, it is a prisoner's refusal to take advantage of the vaccine that risks diminishing his ability to provide self-care, not any underlying condition itself.

Recently, the Third Circuit in an unreported case, United States v. Thomas, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022), recognized that:

> District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release. *See, e.g.,* United States v. Brinson, 2021 WL 2451970, at *2 (D. N.J. June 16, 2021) ("[B]ecause Defendant was offered and refused the COVID-19 vaccine, he cannot establish that 'compelling and extraordinary reasons' justify his release." (internal citations omitted)); United States v. Sawyers, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."), *appeal dismissed*, No. 21-50157, 2021 WL 6196971 (9th Cir. Oct. 18, 2021).

In light of "the fact that [Icker] declined to receive an available COVID-19 vaccine without reason [] necessarily precludes him from showing 'extraordinary and compelling reasons' to justify his compassionate release." Ortiz, 2021 WL 1422816, *4. Thus, since Icker has failed to satisfy the threshold inquiry relative to

his motion, s*ee* 18 U.S.C. §3582(c)(1)(A)(i), "the Court declines to proceed to address whether [Icker] would present a danger to the community if released, whether release would be consistent with the Sentencing Commission's policy statement, or whether compassionate release would be consistent with the factors set forth in 18 U.S.C. §3553(a)." Ortiz, 2021 WL 1422816, *5 (string citations omitted).[1]

☐   DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. §3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

s/ *Malachy E. Mannion*
_____
Malachy E. Mannion,
U.S. DISTRICT JUDGE

**Dated: July 8, 2022**
19-338-08

---

[1] The court notes that even if it did consider the applicable §3553(a) factors, it would have found that the need for the lengthy sentence imposed on Icker to reflect the utterly reprehensible nature of his offenses and his blatant abuse of power in order to coerce women to perform sex acts on him, to promote respect for the law, to provide just punishment for the offenses, and to afford adequate deterrence to his disturbing criminal conduct, overwhelmingly would not warrant a 90% sentence reduction in Icker's case. *See* United States v. Icker, 13 F.4th 321, 323 (3d Cir. 2021) ("As a police officer, Mark Icker used his badge to harass, grope, and force oral sex on several women."). Thus, even if the court did consider the factors under 18 U.S.C. §3553(a), the court would have also denied Icker's motion, (Doc. 54), on this basis.