UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| v. : | **CRIMINAL NO. 3:19-CR-338** |
| **MARK ICKER,** : | **(JUDGE MANNION)** |
| Defendant : | |

## ORDER[1]

On August 8, 2022, defendant Icker filed a "renewed motion for compassionate release", (Doc. 64), with attached Exhibits, which is construed as a motion for reconsideration, regarding the court's July 8, 2022

---

[1] The background of this case is stated in the court's July 8, 2022 Order denying Icker's initial motion for compassionate release. (Doc. 62). The complete background of this case also is stated in the Third Circuit's September 14, 2021 Opinion, see United States v. Icker, 13 F.4th 321 (3d Cir. 2021). (See also government's opposition brief, Doc. 57 at 10-17). Briefly, on November 26, 2019, Icker pleaded guilty to 2 counts of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. §242. (Doc. 10). Icker's advisory sentencing guideline range was 210 to 240 months. (Doc. 22). The court varied downward, sentencing Icker on July 24, 2020, to an aggregate sentence of 180 months' imprisonment followed by three years of supervised release. Icker began serving his 15-year sentence on September 9, 2020. (Doc. 25). On October 14, 2021, the court amended Icker's judgment only with respect to removing the SORNA conditions of his supervised release as mandated by the Third Circuit. (Doc. 52).

Icker is currently serving his sentence at FCI Butner, Low, and his projected release date is about 11 years away on May 13, 2033. See, Find an Inmate, Federal Bureau of Prisons, http://www.bop.gov/inmateloc/ (search for BOP Register Number "77123-067").

Order, (Doc. 62), denying his initial motion for compassionate release under §3582(c)(1)(A)(i), (Doc. 54).

On July 27, 2022, Icker filed a notice of appeal with the Third Circuit regarding the court's July 8, 2022 Order. (Doc. 65). Icker's appeal is presently pending with the Third Circuit.

In its July 8, 2022 Order, the court found that despite Icker's medical conditions and the risks he faces if he again contracts the COVID-19 virus, based on "the fact that [Icker] declined to receive an available COVID-19 vaccine without reason [] necessarily precludes him from showing 'extraordinary and compelling reasons' to justify his compassionate release." (Doc. 62) (quoting United States v. Ortiz, 2021 WL 1422816, at *4 (E.D. Pa. Apr. 15, 2021)).

The court also indicated that Icker's BOP medical records showed that he is receiving regular and proper medical care for his conditions, including periodic follow-up visits with cardiac specialists and cardiothoracic surgeons at highly regarded outside medical facilities, including Duke University Regional Hospital. Further, the court found that Icker's conditions were controlled, and that he was capable of independent daily living in the prison setting. It was also noted that neither Icker's serious heart problems nor any of his other medical conditions, amounted to terminal conditions, from which Icker is not expected to recover. Significantly, the court pointed out that Icker's medical records indicated that when he previously contracted COVID-19, he had only mild symptoms without any lasting side-effects.

Presently, at FCI Butner Low there are no positive COVID-19 inmate cases and 1 positive staff cases. Currently, at the entire prison complex at FCC Butner, 979 staff and 3958 inmates have been fully vaccinated. *See* https://www.bop.gov/coronavirus/. As the court previously stated, "[t]he resulting herd immunity tends to reduce further the risk of infection." U.S. v. Matos, 2022 WL 702858, *4 (D. N.J. March 9, 2022). Thus, the court concluded that even though Icker refuses vaccination, he still benefits from the herd immunity of the inmates and staff who have been vaccinated and from those who already had the virus.

In his motion for reconsideration, Icker alleges that there is new evidence that was not previously available which shows that he should be re-sentenced to home confinement. Icker also requests the court to conduct an evidentiary hearing regarding his motion for reconsideration.

On August 16, 2022, Icker advised the court that on August 9, 2022, he was taken to Duke University Hospital to be examined and have several tests performed to check the status of his congestive heart failure. Further, Icker alleged that his blood pressure is still "uncontrolled and in hypertension", and that his "Heart Aneurysm was also still uncontrolled and at 5 cm." (Doc. 67).

Based on the new information received by the court, the court directed the government to file Icker's medical records regarding his recent exam at Duke Hospital, as well as any additional BOP medical records not previously submitted, and any records related to Icker's stated allegations.

- 3 -

The government filed Icker's supplemental records under seal on August 23, 2022. (Doc. 69).

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)); Chesapeake Appalachia, LLC v. Scott Petroleum, LLC, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (Generally, reconsideration motions should be granted sparingly.). "The standard for granting a motion for reconsideration is a stringent one ... [A] mere disagreement with the court does not translate into a clear error of law." Chesapeake Appalachia, LLC, 73 F. Supp. 3d at 491 (quoting Mpala v. Smith, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007), aff'd, 241 Fed.Appx. 3 (3d Cir. 2007)) (alteration in original).

The burden for reconsideration is on the moving party and Icker does not demonstrate that any of the three grounds exist in his case which are required for the court to grant reconsideration. Further, since the court gave a detailed explanation in its July 8, 2022 Order for denying Icker's original

motion for compassionate release, it will not repeat this discussion. Also, simply because Icker is unhappy with the result of the court's prior Order "is an insufficient basis to grant [him] relief." Kropa v. Cabot Oil & Gas Corp., 716 F.Supp.2d 375, 378 (M.D. Pa. 2010) (citation omitted).

The court also notes that it has reviewed Icker's Exhibits submitted with his instant motion. The August 9, 2022 letter from Icker's former primary care physician, Sean P. McCall, DO, who has not examined Icker in about two years since his confinement, is neither persuasive nor are his opinions given significant weight since he does not specialize in any of the fields upon which he offers his opinions. Dr. McCall is an internist and his opinions regarding Icker's heart condition and his belief that Icker would be better treated at the Hospital of the University of Pennsylvania, as opposed to his current monitoring at the Duke University Regional Hospital, is afforded little evidentiary value. Dr. McCall, who is not a board certified cardiologist, is questionably qualified to render opinions as to Icker's heart conditions which appear to be properly treated and monitored by the BOP and Duke University Hospital, as the court previously found. Indeed, Dr. McCall concedes that Icker does need to have his aortic valve and heart surgery as soon as possible as the cardiologists at Duke Hospital have continually recommended.

Dr. McCall's unsupported opinions as to why he believes Icker is "someone best served to not get the [COVID-19] vaccines", carries even less weight. Nor does the doctor offer any substantiation for his opinions. *See*

*also* U.S. v. Lindsay, 2022 WL 1720458, *3 (W.D. Pa. May 27, 2022) ("in light of the proliferation and availability of the COVID-19 vaccine, even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection.") (citations omitted).

The court also notes that it previously considered a July 16, 2020 letter from Dr. McCall and the January 24, 2022 letter from Dr.Trerotola at Penn Medicine, Icker re-submitted with his present motion, (Doc. 64 at 12), when it ruled on Icker's initial motion. (Doc. 54 at 22 & 23).

The supplemental BOP medical records submitted by the government contain a summary of Icker's exam on August 9, 2022 at the Duke Cardiothoracic Surgery Clinic. (Doc. 69 at 5, 55). The note from the Duke Clinic indicated that Icker was scheduled for his recommended aortic aneurysm surgery in April 2022, but it was cancelled "because [Icker] decided he didn't want surgery at that time." Duke cardiologists then again recommended that they proceed with Icker's needed surgery for his ascending aortic aneurysm and set a target surgery date for September 21, 2022. Icker again declined surgery at his August 9, 2022 exam at the Duke Clinic and requested that his condition be monitored. Icker's pre-surgery evaluation indicated that he was a suitable candidate for the cardiothoracic surgery at Duke. (Doc. 69 at 63). Remarkedly, the records show that although the expert medical consensus is that Icker requires surgery for his

aortic aneurysm that can be performed at the nationally renowned Duke University Hospital, he repeatedly has declined to have the needed surgery and advised the prison medical staff on August 16, 2022 that he "does not want surgery of aortic aneurysm as recommended", rather, "he wants to continue to monitor it yearly." (Doc. 69 at 3). The record also shows that Icker's medications were adjusted as recommended by the Duke Clinic and his blood pressure was to be monitored every month for better control of it. (Id.).

Icker's BOP medical records also indicated that he was evaluated to see if he had an intracranial aneurysm on March 15, 2022, and that he had a brain MRA performed. (*See* Radiologic Report 03/15/2022 Brain MRA at FMC Butner, Doc. 59-6 at 4). The results indicated a "normal MRA of the brain", "no acute intracranial abnormalities", and that he had a "small chronic frontal lobe infarct" that was "similar in appearance from his prior brain MRI from July 27, 2021. In neither study was that any evidence of an acute infarct and there was "no evidence of flow-limiting arterial stenosis" or any evidence of "intracranial aneurysm."

In short, Icker's BOP medical records, including the supplemental records, (Doc. 69), demonstrate that Icker is receiving regular and proper medical care for his conditions at LSCI Butner and, that he is receiving his prescribed medications contrary to his unsubstantiated allegations that he is not. (*See* Doc. 69 at 47-49). The records also show that while Icker seeks the court to immediately release him from prison due to his heart condition

claiming that he requires care at the University of Pennsylvania Hospital, his condition is being properly treated at the Duke Cardiothoracic Surgery Clinic and he has declined to heed the repeated recommendations at Duke that he requires surgery at this time.

Further, as the court stated in its July 8, 2022 Order:

> Icker's repeated reliance on the CDC for purposes of showing that his medical conditions still render him more vulnerable to becoming severely ill if he is reinfected with COVID-19, even though he previously recovered from it, is disingenuous since on the other hand he completely ignores CDC's strong recommendation for people to get fully vaccinated as the best protection against getting the virus and for recovering with less symptoms if they do contract the virus. *See* United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective."); *see also* United States v. Darby, 2022 WL 1423089, *5 (D. N.J. May 5, 2022) (holding that '[t]he available vaccines (Pfizer, Moderna, and Johnson & Johnson) have been shown to be highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms", and "[t]he wide availability of vaccines tends to render the COVID-19 risk less extraordinary or compelling.") (citing https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status and https://covid.cdc.gov/covid-data-tracker/#covidnet-hospitalizations-vaccination).

*See also* U.S. v Hannigan, 2022 WL 815449 (E.D. Pa. March 17, 2022) ("District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and

- 8 -

compelling reason for compassionate release.) (citing, in part, United States v. Bednarski, 2022 WL 80080, at *5 (W.D. Pa. Jan. 7, 2022) (finding that defendant's vaccination and booster mitigates his risk despite his serious health conditions); United States v. Reed, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit.")).

Icker's reliance on a short passage from a Fourth Circuit Order in the case of United States v. Jacobs, 2022 U.S. App. LEXIS 16451 (4th Cir. June 14, 2022) (stating "Upon consideration of the government's unopposed motion to remand, the court grants the motion, vacates the district court's judgment, and remands this case to the district court for reconsideration of appellant's motion for compassionate release."), (Doc. 64 at 4), is not instructive nor binding precedent on this court, and Icker's assertion that "it must be followed", is incorrect. In fact, a district court in the Fourth Circuit issued a decision after the Order in Jacobs, see United States v. Williams, 2022 WL 2286198, *3 (E.D. N.C. June 23, 2022), in which it stated:

> Although [defendant] argues his health conditions place him at heightened risk of serious infection from COVID-19, [defendant] has declined to receive a COVID-19 vaccine and has provided no medical, religious, or other reason why he cannot receive a COVID-19 vaccine. [Defendant] can significantly ameliorate[ ] his risk by getting a vaccine and may not perpetuate [his] own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect him. Because [defendant] decided to remain[ ] at elevated risk because he has declined to be vaccinated,

> he cannot plausibly characterize that risk as an extraordinary and compelling justification for release. The risk is self-incurred.

(internal quotations and citations omitted).

Additionally, as this court pointed out in its July 8, 2022 Order, the district courts in the Third Circuit, as well as the Third Circuit itself, in a recent unpublished case, United States v. Thomas, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022), in "denying compassionate relief have routinely taken into account a prisoner's refusal to be vaccinated." United States v. Darby, 2022 WL 1423089, at *6 (D. N.J. May 5, 2022) (string citations omitted). *See also* United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) (holding that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"); United States v. Verasawmi, 2022 WL 2763518, *5 (D. N.J. July 15, 2022) ("courts within and outside this district have concluded, vaccination status [of a defendant when considering compassionate release motions] is an important factor in assessing the risks associated with COVID-19") (string citations omitted). Further, as stated, Dr. McCall's August 8, 2022 letter, fails to show that Icker is unable to receive or benefit from a COVID-19 vaccine. *See also* https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (holding that "[p]eople who were unvaccinated had a greater risk of testing positive for COVID-19 and a greater risk of dying from COVID-19 than people who were fully vaccinated"); https://covid.cdc.gov/covid-data-tracker/#covidnet-hospitalizations-

vaccination ("the monthly rates of COVID-19-associated hospitalizations were **4x** Higher in Unvaccinated Adults Ages 18-49 years [Icker is 33 years old]).

The court also notes that on August 8, 2022, Icker tested negative for COVID-19. (Doc. 69 at 45).

Finally, although not specifically addressed in its July 8, 2022 Order, the court will now consider the factors under 18 U.S.C. §3553(a), for purposes of Icker's motion for reconsideration. Similar to its note in its July 8, 2022 Order, the court holds as follows:

> [in] consider[ing] the applicable §3553(a) factors, [the court finds] that the need for the lengthy sentence imposed on Icker to reflect the utterly reprehensible nature of his offenses and his blatant abuse of power in order to coerce women to perform sex acts on him, to promote respect for the law, to provide just punishment for the offenses, and to afford adequate deterrence to his disturbing criminal conduct, overwhelmingly [does] not warrant a 90% sentence reduction in Icker's case. See United States v. Icker, 13 F.4th 321, 323 (3d Cir. 2021) ("As a police officer, Mark Icker used his badge to harass, grope, and force oral sex on several women.").

The court also notes that in his filings, Icker shows no remorse for his heinous crimes. Nor does Icker take any responsibility for his deplorable conduct he committed as an officer of the law. Shockingly, Icker refers to his current offenses as "non-violent" crimes, (Doc. 64 at 5), which clearly underscores his complete failure to acknowledge the gravity of his offenses, described above. Icker continues to represent a clear danger to the public if he is released to serve the remainder of his prison sentence on home

confinement. Thus, even if the circumstances are extraordinary in this case, consideration of the factors under 18 U.S.C. §3553(a) weigh heavily against an order of Icker's release. As such, in considering the factors under 18 U.S.C. §3553(a), the court will also deny Icker's motion for reconsideration, (Doc. 64), on this basis.

Accordingly, to the extent Icker requests the court to reconsider its July 8, 2022 Order, (Doc. 62), denying his initial motion for compassionate release, (Doc. 54), his motion, **(Doc. 64)**, is **DENIED**. Icker's request for an evidentiary hearing, (Doc. 64 at 1), is also **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 23, 2022**
19-338-09